Colorado Court of Appeals Opinions || April 21, 2016

Colorado Court of Appeals -- April 21, 2016
2016 COA 62. No. 14CA2396. People v. Valadez.

 
 
 
 COLORADO COURT OF APPEALS

 
 2016 COA 62

 
 

 Court of Appeals No. 14CA2396
 Logan County District Court No. 08CR34
 Honorable Michael K. Singer, Judge

 The People of the State of Colorado,

 Plaintiff-Appellee,

 v.

 Edward Valadez,

 Defendant-Appellant.

  

 ORDER REVERSED AND CASE
 REMANDED WITH DIRECTIONS

 Division VI
 Opinion by JUDGE FREYRE
 Terry and Navarro, JJ., concur

 Announced April 21, 2016

 Cynthia H. Coffman, Attorney General, Carmen Moraleda, Assistant Attorney General, Denver, Colorado, for Plaintiff-Appellee

 Edward Valadez, Pro Se

 ¶1       This appeal presents an issue of first impression: If a Colorado prison inmate commits a misdemeanor offense in prison, and the district court imposes a consecutive county jail sentence on the misdemeanor, which sentence is served first, the jail sentence or the remainder of the prison sentence? Applying section 18-1.3-501(1)(c), C.R.S. 2015, we hold that the prisoner must be remanded to county jail to serve the jail sentence first and then be transferred back to the Department of Corrections (DOC) to serve the remainder of the prison sentence. Therefore, we reverse the district court’s order in this case ruling that defendant, Edward Valadez, must serve the remainder of his prison sentence before his jail sentence, and we remand for further proceedings.

 I. Background

 ¶2       While serving a prison sentence in the custody of the DOC, Mr. Valadez committed an assault. He pleaded guilty to third degree assault, a class 1 misdemeanor. In 2008, the district court sentenced him to fifteen months in the county jail. It ordered the jail sentence to be served consecutively to the prison sentence Mr. Valadez was already serving.

 ¶3       In 2014, Mr. Valadez filed the Crim. P. 35(a) motion at issue. According to the motion, after the 2008 sentencing hearing, he was returned to the DOC to serve the remainder of his thirty-five-year prison sentence before beginning to serve his fifteen-month jail sentence. This pending county jail sentence created a detainer on Mr. Valadez’s prison sentence that affected his parole eligibility date and his eligibility for transitional placements in the community. He claimed that, under section 18-1.3-501(1)(c), he should have been allowed to serve his jail sentence before serving the remainder of his prison sentence. He asked the district court to amend the mittimus to reflect time served on the jail sentence so that the detainer would be removed from his prison sentence.

 ¶4       Section 18-1.3-501(1)(c), a provision within the statute governing sentencing for misdemeanor offenses, states:

 A term of imprisonment in a county jail for a conviction of a misdemeanor, petty, or traffic misdemeanor offense shall not be ordered to be served consecutively to a sentence to be served in a state correctional facility; except that if, at the time of sentencing, the court determines, after consideration of all the relevant facts and circumstances, that a concurrent sentence is not warranted, the court may order that the misdemeanor sentence be served prior to the sentence to be served in the state correctional facility and prior to the time the defendant is transported to the state correctional facility to serve all or the remainder of the defendant’s state correctional facility sentence.

 ¶5       The district court denied Mr. Valadez’s motion, concluding that section 18-1.3-501(1)(c) does not apply where a defendant has already begun serving his prison sentence at the time he is sentenced for the misdemeanor. The court reasoned:

 Section 18-1.3-501(1)(c) . . . applies to felony sentences imposed at the same time as misdemeanor sentences, or imposed in such a way as to interrupt a misdemeanor sentence. . . . [T]he plain language of the statute applies to misdemeanor sentences being imposed consecutively to felony DOC sentences "to be served," not sentences already being served.

 II. Analysis

 A. Initial Matters

 ¶6       We consider two issues before addressing the merits. First, there is a question whether Mr. Valadez’s Crim. P. 35(a) claim challenges an actual aspect of the district court’s original sentence. The sentencing hearing transcript is not part of the record on appeal, so the record does not explicitly show whether the district court required Mr. Valadez to serve his prison sentence before his jail sentence. The mittimus only reflects the consecutive nature of the sentences.

 ¶7       However, the People do not challenge this issue and agree in their answer brief that this issue was properly brought under Crim. P. 35(a). Accordingly, we deem Mr. Valadez’s Crim. P. 35(a) claim as properly challenging an aspect of his sentence.

 ¶8       Next, we conclude that the motion was timely, although Mr. Valadez raised it more than six years after the sentencing hearing. A claim that a sentence is "not authorized by law" may be raised "at any time," while a claim that a sentence was "imposed in an illegal manner" must be raised within the time limit provided by Crim. P. 35(b). See Crim. P. 35(a). Because Mr. Valadez contends that his sentence violates section 18-1.3-501(1)(c), we construe the claim as one "not authorized by law." See People v. Wenzinger, 155 P.3d 415, 418 (Colo. App. 2006) ("[A] sentence is ‘not authorized by law’ under . . . Crim. P. 35(a) if it is inconsistent with the statutory scheme outlined by the legislature."). The claim is therefore not time barred.

 B. Standard of Review

 ¶9       "The legality of a sentence is a question of law that we review de novo." People v. Bassford, 2014 COA 15, ¶20. We also review questions of statutory interpretation de novo. See Reno v. Marks, 2015 CO 33, ¶20.

 C. Section 18-1.3-501(1)(c)

 ¶10       We begin by analyzing the language of section 18-1.3-501(1)(c). In doing so, we give words and phrases their plain and ordinary meanings. See Reno, ¶20. If statutory language is unambiguous, we apply the language as written and do not resort to other rules of statutory interpretation. Id.

 ¶11       The first clause of section 18-1.3-501(1)(c) creates a general rule that "[a] term of imprisonment in a county jail for a conviction of a misdemeanor, petty, or traffic misdemeanor offense shall not be ordered to be served consecutively to a sentence to be served in a state correctional facility." Id. And the second clause of section 18-1.3-501(1)(c) creates an exception to that general rule:

 except that if, at the time of sentencing, the court determines, after consideration of all the relevant facts and circumstances, that a concurrent sentence is not warranted, the court may order that the misdemeanor sentence be served prior to the sentence to be served in the state correctional facility and prior to the time the defendant is transported to the state correctional facility to serve all or the remainder of the defendant’s state correctional facility sentence.

 1. Ambiguity of the General Rule

 ¶12       Under section 18-1.3-501(1)(c), a district court generally may not order a county jail sentence to be served consecutively to a prison sentence "to be served" in the custody of the DOC. The phrase "to be served" is ambiguous. The district court ruled, and the People argue on appeal, that the phrase "to be served" refers only to a prison sentence that a defendant has not yet begun serving. Thus, the district court held that section 18-1.3-501(1)(c) did not apply here because Mr. Valadez had already begun serving his prison sentence at the time he was sentenced on the misdemeanor.

 ¶13       That is one reasonable interpretation of the first clause of section 18-1.3-501(1)(c) (the general rule precluding a consecutive jail sentence), but not the only one. The phrase "to be served" could also reasonably include the situation where a portion of a prison sentence has already been served, but the remainder of the prison sentence is yet "to be served." Significantly, that interpretation is consistent with the very last phrase in section 18-1.3-501(1)(c), which requires that a defendant serve the consecutive county jail sentence before being transferred to the custody of the DOC to serve "all or the remainder" of his prison sentence. Id. (emphasis added); see also Reno, ¶20 ("[W]e examine the statutory language in the context of the statute as a whole and strive to give ‘consistent, harmonious, and sensible effect to all parts.’" (quoting Denver Post Corp. v. Ritter, 255 P.3d 1083, 1088-89 (Colo. 2011))).

 ¶14       Given these two reasonable interpretations of "to be served" in the first clause of section 18-1.3-501(1)(c), the clause is ambiguous as applied to the situation presented here.

 2. The Exception to the General Rule

 ¶15       The second clause of section 18-1.3-501(1)(c) creates an exception to the general rule in the first clause. This exception recognizes that there will be particular cases where a consecutive jail sentence is appropriate. In such cases, "the court may order that the misdemeanor sentence be served prior to the sentence to be served in the state correctional facility and prior to the time the defendant is transported to the state correctional facility to serve all or the remainder of the defendant’s state correctional facility sentence." Id. (emphasis added).

 ¶16       We must consider whether the word "may" in the last clause of section 18-1.3-501(1)(c) should be interpreted as permissive or mandatory. Does it give a district court discretion to order that the consecutive jail sentence be served prior to (all or the remainder of) the prison sentence, or does it require the district court to do so?

 ¶17       Usually the word "may" denotes a grant of discretion and is interpreted as permissive. Cagle v. Mathers Family Trust, 2013 CO 7, ¶31. But, "[a]n alternate definition of the word ‘may,’ if used in a statute, is ‘must’ or ‘shall.’ If the legislative purpose underlying the statute is not fulfilled by a permissive construction, ‘may’ is construed to impose the mandatory requirement associated with the word ‘shall.’" Danielson v. Castle Meadows, Inc., 791 P.2d 1106, 1113 (Colo. 1990) (citation omitted).

 ¶18       A permissive construction of "may" in this exception to the general rule could arguably subvert the legislative purpose to prohibit the imposition of a consecutive jail sentence following a prison sentence. Such a permissive view could allow this exception to swallow the general rule by permitting a court to impose a consecutive jail sentence to follow a prison sentence whenever the court deems it appropriate. Thus, a mandatory interpretation of "may" could be reasonable here. Because there are two reasonable alternative meanings of the word "may" in this context, we conclude it is ambiguous.

 D. Legislative History of Section 18-1.3-501(1)(c)

 ¶19       Given these ambiguities in the plain language of section 18-1.3-501(1)(c), we turn to other aids of statutory interpretation, including legislative history. See People v. Disher, 224 P.3d 254, 256 (Colo. 2010) ("If the [statutory] language is ambiguous, we rely on other factors, including: legislative history, the consequences of a given construction, and the end to be achieved by the statute."); see also § 2-4-203(1)(c), C.R.S. 2015 (permitting courts to use legislative history to determine the intent of the General Assembly).

 ¶20       The legislative history for section 18-1.3-501(1)(c) is instructive. Provision (1)(c) was added to section 18-1.3-501 in 2007. See Ch. 145, sec. 4, § 18-1.3-501(1)(c), 2007 Colo. Sess. Laws 557-58. It became effective on April 16, 2007. The record indicates that Mr. Valadez committed the misdemeanor assault in September 2007; thus, section 18-1.3-501(1)(c) applies to this offense. The addition of section 18-1.3-501(1)(c) was part of an omnibus bill — House Bill 07-1315 — proposed to the General Assembly by the Colorado Criminal Defense Bar (defense bar). Two representatives from the defense bar testified on behalf of the bill before the House and Senate Judiciary Committees: Maureen Cain, the legislative coordinator for the defense bar, and Lindy Frolich, the director of the Office of the Alternate Defense Counsel.

 ¶21       The original version of the proposed amendment included only what is now the general rule in the first sentence of section 18-1.3-501(1)(c), prohibiting a district court from ordering a county jail sentence to be served consecutively to a prison sentence. However, following negotiations between Maureen Cain and David Thomas, the executive director of the Colorado District Attorneys’ Council, the defense bar proposed an amendment to the bill that added the exception to the general rule to account for circumstances where a consecutive jail sentence would be appropriate. See Hearing on H.B. 1315 before the H. Judiciary Comm., 66th Gen. Assemb., 1st Sess. (Mar. 7, 2007) (H. Judiciary Comm. Hearing).

 ¶22       The primary sponsor of the bill in the House of Representatives, as well as Ms. Cain and Ms. Frolich, testified regarding the purpose of the statutory amendment. See Vensor v. People, 151 P.3d 1274, 1279 (Colo. 2007) ("[T]he testimony of a bill’s sponsor concerning its purpose and anticipated effect can be powerful evidence of legislative intent."); People v. Rockwell, 125 P.3d 410, 419 (Colo. 2005) ("While less persuasive than a statement of a legislator during debate, testimony before a congressional committee helps illustrate the understanding of legislators and, thus, helps identify the legislative intent."). They explained that where a county jail sentence is imposed consecutively to a prison sentence, and where the offender is forced to serve the prison sentence first, a county jail "detainer" is put on that prison sentence. Such a detainer makes the prisoner ineligible for various programs that help state prisoners successfully transition to life outside of prison before being paroled, such as placement in community corrections or on intensive supervision parole (transitional programs). Instead, a prisoner with a county jail detainer must first serve his full sentence in prison, and then be paroled directly to the county jail to begin serving his consecutive jail sentence. After fully serving the jail sentence, the prisoner is then released directly into the community, without having had the benefit of the transitional programs available in the DOC. See H. Judiciary Comm. Hearing. Notably, in his Crim. P. 35(a) motion and in this appeal, Mr. Valadez has expressed this same concern regarding the detainer on his prison sentence.

 ¶23       Regarding the legal issue presented in this case, key testimony occurred before the House Judiciary Committee when Representative Gardner asked Ms. Cain how the bill would apply to the situation where a prisoner commits a misdemeanor offense while in prison and the court decides to impose a consecutive jail sentence for the misdemeanor. Ms. Cain responded that the court

 $$can order the misdemeanor to be served prior to the sentence to DOC, so in fact I think we will be able to interrupt and actually toll the DOC sentence, and require that they serve that misdemeanor sentence forthwith, and then be transported back to DOC to serve the remainder of the DOC sentence. Id. (emphases added). During Ms. Frolich’s testimony, she also specifically addressed Representative Gardner’s question, stating,

 Address[ing] Representative Gardner’s concern, . . . yeah, there are some circumstances where there shouldn’t be a freebie, there should still be a sentence of some sort, but having that sentence served forthwith in a county jail then enables that person to go back to prison [without the county jail detainer].

 Id. (emphases added).

 ¶24       Again, section 18-1.3-501(1)(c) was proposed to the General Assembly by the defense bar, and Ms. Cain and Ms. Frolich were the defense bar’s representatives testifying on behalf of the amendment. The House Judiciary Committee’s ultimate approval of the amendment suggests that the Committee agreed with the meaning and application of section 18-1.3-501(1)(c) as expressed by Ms. Cain and Ms. Frolich. See Rockwell, 125 P.3d at 419.

 ¶25       In the Senate, the primary sponsor of the bill told the Senate Judiciary Committee that Ms. Cain and Ms. Frolich would be testifying to explain the meaning and purpose of the statutory amendment. See Hearing on H.B. 1315 before the S. Judiciary Comm., 66th Gen. Assemb., 1st Sess. (Mar. 19, 2007) (S. Judiciary Comm. Hearing). Ms. Cain and Ms. Frolich provided testimony to the Senate Judiciary Committee similar to what they said to the House Judiciary Committee. See id. Ms. Cain testified that if a court determines that a consecutive jail sentence is appropriate, it should "interrupt" the DOC sentence so that the offender can serve the jail sentence first before being transferred back to the DOC. Id. And, when the Chair of the Senate Judiciary Committee asked Ms. Frolich whether the amendment would require the jail sentence to be served before the entirety of the prison sentence, Ms. Frolich clarified,

 [E]ssentially that’s true, except [if] there’s an offense that is committed while somebody is in prison, which also happens, [that’s why the last clause of the proposed statutory provision reads] "to serve ‘all or the remainder’ of the defendant’s sentence." So I think hopefully it’s written to accommodate [that situation].

 Id. (emphasis added).

 ¶26       Ms. Cain and Ms. Frolich also clarified that the amendment would "require" a district court imposing a consecutive jail sentence to order that the jail sentence be served before all or the remainder of the prison sentence. See S. Judiciary Comm. Hearing; H. Judiciary Comm. Hearing. Thus, the legislative history sufficiently indicates that the General Assembly intended the word "may" in the last clause of section 18-1.3-501(1)(c) to mean "must" or "shall." See Danielson, 791 P.2d at 1113.

 ¶27       Ms. Cain’s and Ms. Frolich’s testimony before the House and Senate Judiciary Committees, followed by the ultimate adoption of the bill, lead us to the following conclusion: In passing section 18-1.3-501(1)(c), the General Assembly intended that, when a district court determines that a concurrent sentence is not warranted for a misdemeanor committed by a prisoner in a state prison facility, the court must toll the prison sentence, order that the county jail sentence for the misdemeanor be served before the remainder of the prison sentence, and send a mittimus to the DOC reflecting its sentence. After fully serving the jail sentence, the prisoner must then be transferred back to the custody of the DOC to serve the remainder of his prison sentence.

 E. Issues Raised by the People

 ¶28       The People argue that our interpretation of section 18-1.3-501(1)(c) would contravene section 17-22.5-402(1), C.R.S. 2015, which provides, "[n]o inmate shall be discharged from the department until he has remained the full term for which he was sentenced." We are unpersuaded, for two reasons.

 ¶29       First, we do not construe the term "discharge" in section 1722.5-402(1) to include the statutory requirement presented here, where a defendant is transported to court on a writ, the court imposes a consecutive county jail sentence and remands the defendant to county jail to serve that sentence, and, after fully serving that sentence, the defendant is transported back to the DOC to serve the remainder of his prison sentence. And second, to the extent the two statutory provisions conflict, section 18-1.3-501(1)(c) is the more specific and more recently enacted provision, and it therefore controls. See In re Marriage of Rozzi, 190 P.3d 815, 819 (Colo. App. 2008).

 ¶30       The People also argue that interrupting a DOC sentence in this way will create an "administrative conundrum." Even if our ruling today results in administrative burdens, we cannot ignore the legislative intent underlying section 18-1.3-501(1)(c) and cannot rewrite statutes to avoid such burdens. Section 18-1.3-501(1)(c) demonstrates the General Assembly’s intent to vest courts with the authority to impose a consecutive jail sentence, but requires the sentence be served prior to all or the remainder of the DOC sentence.

 F. Other Issues Raised by Mr. Valadez

 ¶31       In his Crim. P. 35(a) motion and on appeal, Mr. Valadez’s primary claim is that, under section 18-1.3-501(1)(c), he should have been allowed to serve his jail sentence before serving the remainder of his prison sentence. However, one can also construe his motion and appellate briefs as arguing that the district court could not impose a consecutive jail sentence at all. To the extent he argues the latter, his argument fails. The cases he cites — People v. Green, 734 P.2d 616 (Colo. 1987), and People v. Battle, 742 P.2d 952 (Colo. App. 1987) — did not address the issue presented here. And regardless, those cases were decided long before the passage of section 18-1.3-501(1)(c). As we have held, section 18-1.3-501(1)(c) authorized the district court to impose a consecutive jail sentence, but also required that the jail sentence be served before the remainder of the prison sentence.

 ¶32       That brings us to the relief Mr. Valadez requested in his Crim. P. 35(a) motion, and which he clarifies in his reply brief on appeal: he should be given credit for time served in prison on his jail sentence (so that the detainer is removed). That relief is not available. The only available relief is that mandated by section 18-1.3-501(1)(c): Mr. Valadez must serve his jail sentence forthwith and then be transferred back to the custody of the DOC to serve the remainder of his prison sentence.

 III. Conclusion

 ¶33       The order is reversed and the case is remanded for further proceedings. On remand, as soon as practicable, the district court shall hold a resentencing hearing with Mr. Valadez present. At the hearing, the court shall order that his consecutive fifteen-month jail sentence be served prior to the remainder of his thirty-five-year prison sentence. The district court shall also amend the mittimus to include that ruling. At the conclusion of the resentencing hearing, the district court shall remand Mr. Valadez to the county jail to begin serving his fifteen-month jail sentence. After fully serving that sentence, he shall be transported back to the custody of the DOC to finish serving his prison sentence.

 JUDGE TERRY and JUDGE NAVARRO concur.

These opinions are not final. They may be modified, changed or withdrawn in accordance with Rules 40 and 49 of the Colorado Appellate Rules. Changes to or modifications of these opinions resulting from any action taken by the Court of Appeals or the Supreme Court are not incorporated here. 

Colorado Court of Appeals Opinions || April 21, 2016

Back